J. Robert Forshey
State Bar No. 07264200
Laurie Dahl Rea
State Bar No. 00796150
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Fort Worth, TX 76102
Telephone: 817-877-8855
Facsimile: 817-877-4151
bforshey@forsheyprostok.com
lrea@forsheyprostok.com

ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TENET CONCEPTS, LLC, | ) | Case No. 18-40270-rfn-11 |
| | ) | |
| Debtor. | ) | Chapter 11 Case |
| | ) | |

**AMENDED PLAN OF REORGANIZATION
FOR TENET CONCEPTS, LLC**

Dated: May 24, 2019.

## ARTICLE I
## DEFINITIONS AND RULES OF CONSTRUCTION

**A.**     **Defined Terms.**

In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.1.     "Administrative Bar Date" shall refer to the deadline to file Claims for Allowance as an Administrative Expense set forth in section 3.1(c) of the Plan.

1.2.     "Administrative Expense" includes any cost or expense of administration of the Debtor's chapter 11 case allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

1.3.     "Allow" or "Allowance," when used with respect to a Claim, shall mean the process of determining whether a Claim is to be Allowed pursuant to this Plan.

1.4.     "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided, however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court.  With respect to an Administrative Expense (other than Ordinary Course Claims), such Claims will be Allowed when a Final Order has been entered by the Bankruptcy Court allowing such Administrative Expense Claim.

1.5.     "Amazon" shall mean Amazon.com, Inc. and its affiliates, including Amazon Logistics, Inc.

1.6.     "Amazon Agreement" shall mean the Delivery Provider Terms of Service/Work Order dated as of March 1, 2015 among the Debtor and Amazon Logistics, Inc., as amended and supplemented, and the Amazon Logistics Delivery Service Partner Program Agreement dated July 3, 2018.

1.7.     "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor or the Estate as of the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, all property of the Estate as defined in section 541 of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all of the following:  Estate Claims, Avoidance Actions, Estate Defenses, Estate Cash, Estate Accounts Receivable, Estate Insurance and Estate Executory Contracts.

1.8.     "Avoidance Action" means a cause of action and rights assertable by the Debtor

against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, and including all causes of action, rights and remedies assertable by the Estate pursuant to section 544 of the Bankruptcy Code.

1.9. "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.10. "Bankruptcy Case" shall mean Case No. 18-40270-rfn-11 before the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

1.11. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

1.12. "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

1.13. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, including all applicable local rules of the Bankruptcy Court, and any reference to a specific rule is a "Bankruptcy Rule."

1.14. "Bar Date" is the date established by the Bankruptcy Court, including through any standing order, for filing proofs of Claim or proofs of Interest which, in this Bankruptcy Case, is June 7, 2018; provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor may file a proof of Claim or proof of Interest, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor, but only as to such Creditor.

1.15. "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.16. "Cash" shall mean cash and cash equivalents, including funds held in a checking or money market account.

1.17. "Cash Collateral shall have the same meaning as in section 363(a) of the Bankruptcy Code.

1.18. "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.19. "Claimant" means the holder of a Claim.

1.20. "Class" means a category or group of holders of Claims or Interests as

designated in Article II of the Plan.

1.21. "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

1.22. "Confirmation Date" means the date of entry of the Confirmation Order.

1.23. "Confirmation Hearing" means the hearing, as it may be continued from time-to-time, conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended, modified, or supplemented.

1.24. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.25. "Contested," when used with respect to a Claim, means a Claim: (a) that is listed in the Schedules of the Debtor as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of the Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of the Debtor, regardless of whether or not a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of Claim is filed after the applicable Bar Date; provided, however, that all Claims shall be deemed as Contested until the applicable Objection Deadline has passed. In addition, any Claim which is subject to an Objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such Claim, including pursuant to section 510(c) of the Bankruptcy Code, shall likewise be deemed to constitute a Contested Claim until such Objection has been resolved by a Final Order.

1.26. "Creditor" shall have the same meaning as in section 101(10) of the Bankruptcy Code.

1.27. "Cure Claim" shall refer to a Claim under section 365(b) of the Bankruptcy Code (a) for the payment or other performance required to cure any existing default under an Executory Contract or (b) for any actual pecuniary loss resulting from any such default under an Executory Contract.

1.28. "Debt" shall mean liability on a Claim.

1.29. "Debtor" shall mean Tenet Concepts, LLC, a Texas limited liability company, the debtor in this Bankruptcy Case.

1.30. "Disallowed," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order or, as to any Contested Claim, any portion thereof which is not Allowed by a Final Order of the Bankruptcy Court.

1.31. "Disclosure Statement" means the written statement, as amended, supplemented, or modified from time-to-time, describing the Plan that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and

Bankruptcy Rules 3017 and/or 3017.1.

1.32. "<u>Distribution</u>" shall refer to and include any distribution of any property pursuant to this Plan.

1.33. "<u>Distribution Date</u>" shall be determined separately as to each Claim.

1.34. "<u>Distribution Record Date</u>" shall have the meaning given in article 7.4 of the Plan.

1.35. "<u>Effective Date</u>" means the first Business Day which is fourteen (14) days after entry of the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XI below are satisfied.

1.36. "<u>Equitable Subordination</u>" shall be broadly construed and shall encompass any right or remedy to equitably subordinate or recharacterize as equity any Claim, including without limitation any such right or remedy pursuant to section 510(c) of the Bankruptcy Code.

1.37. "<u>Estate</u>" shall mean the bankruptcy estate of the Debtor in this Bankruptcy Case.

1.38. "<u>Estate Cash</u>" shall mean all Cash held by the Estate.

1.39. "<u>Estate Claims</u>" shall include any and all Claims or causes of action or rights of action held by the Estate against any Person, whether based on a contract, applicable tort or common law, or any law, statute or regulation of any governmental body or entity, including without limitation all Avoidance Actions, causes of action, rights of action or any right to recover money or property from any Person, as well as all legal and equitable rights and remedies incident to any of the forgoing. Estate Claims shall also include all applicable privileges in relation thereto, including the attorney-client privilege and the work product privilege.

1.40. "<u>Estate Defenses</u>" shall refer to all defenses, affirmative defenses, counterclaims, or rights of offset or recoupment by the Estate against any Person, including without limitation all affirmative defenses referenced in Fed. R. Civ. Pr. 8(c). Estate Defenses shall also include all rights and remedies for Equitable Subordination. Estate Defenses shall also include all applicable privileges with respect thereto, including the attorney-client privilege and work product privilege.

1.41. "<u>Estate Insurance</u>" shall include any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

1.42. "<u>Estate Professional</u>" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.43. "<u>Executory Contract</u>" shall refer to any executory contract or unexpired lease which is subject to section 365 of the Bankruptcy Code.

1.44. "<u>Final Decree</u>" shall mean the decree contemplated under Bankruptcy Rule 3022 closing this Bankruptcy Case.

1.45. "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired, and which such order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding.

1.46. "General Unsecured Claim" shall mean a Claim which is not a Secured Claim, is not an Administrative Expense and is not entitled to priority of distribution pursuant to section 507 of the Bankruptcy Code, and includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

1.47. "Governmental Bar Date" shall mean July 18, 2016, the date by which governmental units must file proofs of claim pursuant to section 502(b)(9) and Bankruptcy Rule 3002(c)(1).

1.48. "Governmental Unit" shall have the same meaning as in section 101(27) of the Bankruptcy Code.

1.49. "Hartford" shall mean Hartford Underwriting Insurance Company.

1.50. "Hartford Agreement" shall mean the Repayment Agreement dated as of October 12, 2017, among the Debtor, Hartford and Principle.

1.51. "Hartford Claim" shall mean the Claim by Hartford pursuant to the Hartford Agreement.

1.52. "Initial Distribution Date", when used with respect to any Allowed Claim shall mean the first Business Day of the second full calendar month after the Effective Date, and when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article IV of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article IV of this Plan applicable to each such Claim. The Initial Distribution Date shall be separately determined with respect to each Claim.

1.53. "Interest" shall mean any equity interest in the Debtor.

1.54. "Jeffrey Lines" shall mean the individual who is the plaintiff in the Lines Lawsuit.

1.55. "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

1.56. "Lines Lawsuit" shall refer to the following lawsuit:

> *Jeffrey Lines, individually and on behalf of others similarly situated v. Amazon.com, Inc. and Tenet Concepts, LLC*, Cause No. 2:17-cv-0072 in the United States District Court for the Western District of Texas, Austin Division.

1.57.    "Mukes Lawsuit" shall refer to the following lawsuit:

> Willie J. Mukes, on behalf of himself and others similarly situated, v. Tenet Concepts, LLC, Cause No. 4:17-cv-00692 in the United States District Court for the Southern District of Texas.

1.58.    "Monthly Plan Payment" shall mean the following: (a) for months 1 through 36 of the Plan, the sum of $5,656.31 (inclusive of interest); and (b) for months 37 through 79 of the Plan, a sum sufficient to pay each Allowed Claim in full through 43 substantially equal monthly payments, including both principal and interest.  A schedule of the Monthly Plan Payments, although subject to change for months 37 through 79 of the Plan, is attached to the Disclosure Statement as its Exhibit 3.  The Monthly Plan Payment shall be solely used to pay Allowed Claims in Classes 5, 6, and 7.

1.59.    "Objection" includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.  Any pleading seeking to subordinate or recharacterize a Claim shall also constitute an Objection.

1.60.    "Objection Deadline" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.61.    "Person" includes any individual, any type of incorporated or registered business or nonprofit entity, including any corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental entity or unit, or any political subdivision thereof, or any other entity of every type or nature.

1.62.    "Petition Date" means January 25, 2018.

1.63.    "Plan" means the Plan of Reorganization filed on November 7, 2018, as it may be altered, amended, modified, or supplemented from time-to-time, including by this Amended Plan of Reorganization for Tenet Concepts, LLC.

1.64.    "Plan Documents" shall refer to the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article I.B. hereof.

1.65.    "Plan Objection Deadline" shall mean the deadline for objections to the Plan set by order of the Bankruptcy Court

1.66.    "Plan Rate" shall mean a rate of simple interest equal to three percent (3%) per annum.

1.67.    "Principle" shall mean Principle Distribution, LLC.

1.68.    "Priority Claim" means a Claim that is entitled to priority of payment under

sections 507(a)(4) through (7) of the Bankruptcy Code.

1.69. "Priority Tax Claim" means a Claim entitled to priority of payment pursuant to section 507(a)(8) of the Bankruptcy Code, other than any Property Tax Claims.

1.70. "Pro Rata Share" shall mean, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

1.71. "Reorganized Debtor" means Tenet Concepts, LLC from and after the Effective Date of this Plan.

1.72. "Retained Causes of Action" means those causes of action, claims, counterclaims, defenses and rights of offset or recoupment retained by the Reorganized Debtor as described in Article VIII of the Plan and in **Exhibit A** to the Plan.

1.73. "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

1.74. "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code.

1.75. "Schedule of Rejected Executory Contracts" means the Schedule of Rejected Executory Contracts attached to this Plan as **Exhibit B**.

1.76. "Secured Claim" shall mean (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim (except, if the holder of such Claim makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be a Secured Claim), and (b) any valid and enforceable right of offset asserted against the Debtor or any Asset.

1.77. "Secured Creditor" shall mean the holder of a Secured Claim.

1.78. "Substantial Consummation" means the day on which the Estate's Assets are vested in the Reorganized Debtor.

1.79. "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.80. "Triumph" shall mean Triumph Business Capital.

1.81. "Unclaimed Property" means any Cash, Distribution, payment or any other property unclaimed for a period of one hundred twenty (120) days after the date of the applicable Distribution, or such longer period which the Reorganized Debtor may fix in the exercise of its good faith business judgment.

1.82. "U.S. Trustee" shall mean the office of the U.S. Trustee for Region 6.

1.83. "U.S. Trustee Fees" shall mean the quarterly fees paid to the U.S. Trustee pursuant to 28 U.S.C., section 1930(a)(6).

1.84. "Xu Lawsuit" shall refer to the following lawsuit:

*Chen Xu, on behalf of himself and others similarly situated, v. Tenet Concepts, LLC, and Does 1-100*, Cause No. 5:17-cv-05175 in the United States District Court for the Northern District of California, San Jose Division.

## B. Rules of Interpretation and Construction of Terms

1.85. Unless otherwise specified, all section, Article and exhibit references in this Plan are to the respective section in, Article of, or exhibit to, the Plan as the same may be amended, supplemented, or otherwise modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions or the interpretation hereof.

1.86. The words "herein," hereof," and "hereunder" or other words of similar import shall refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan, unless the context requires otherwise.

1.87. Whenever from the context it appears appropriate, each term stated in either the singular or plural includes both singular and plural, and pronouns stated in masculine, feminine or neuter form shall include all of the masculine, feminine or neuter form.

1.88. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Disclosure Statement, this Plan, the Confirmation Order and all Plan Documents.

1.89. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to those terms, if any, in the Bankruptcy Code.

1.90. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Certain Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax Number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

1.91. Reference herein to any agreement, contract, instrument or other document in this Plan shall refer to such agreement, contract, instrument or document as amended, supplemented or modified.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1. Classes of Claims. The following is a designation of the Classes of Claims and Interests pursuant to this Plan. Administrative Expenses and Priority Tax Claims have not been

classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim within that Class.

2.2.    <u>Claims and Interests</u>.  Allowed Claims and Interests against or in the Debtor are classified under this Plan as follows:

   (a) <u>Class 1</u> – Triumph Claim

   (b) <u>Class 2</u> – Priority Claims

   (c) <u>Class 3</u> – Hartford Claim

   (d) <u>Class 4</u> – Amazon Claim

   (e) <u>Class 5</u> – General Unsecured Claims

   (f) <u>Class 6</u> – Lines Lawsuit Claims

   (g) <u>Class 7</u> – Mukes Lawsuit Claims

   (h) <u>Class 8</u> – Equity Interests

2.3.    <u>Impaired Classes of Claims and Interests</u>.  Classes 1, 2, 3, and 8 are unimpaired. Classes 4 through 7 are impaired.

2.4.    <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS**

3.1.    Administrative Expenses.

   (a) The Reorganized Debtor shall pay, in the ordinary course of its business and in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtor's business or administering the Estate before the Effective Date ("<u>Ordinary Course Claims</u>").  The remaining provisions of this section 3.1 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article IX below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through this Bankruptcy Case.

   (b) Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense

becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

(c)      Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the Administrative Bar Date. Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to timely and properly file and serve such notice by or on the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred from receiving any Distribution.

(d)      A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.1(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)      The procedures contained in subsections 3.1(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.1(b) above. Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Reorganized Debtor without necessity of application to or order by the Bankruptcy Court.

(f)      If the Reorganized Debtor asserts any Estate Claim as a counterclaim or defense to a Claim for an Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

(g)      Protective Insurance Company shall have an Administrative Expense Claim in the amount of $70,431.00, which it has agreed may be paid as follows: $40,000.00 on the Effective Date, $15,431.00 on or before the 60th day after the Effective Date, and $15,000.00 on or before the 120th day after the Effective Date.

3.2.    Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive, at the Debtor's option, (a) the amount of such holder's Allowed Claim in one Cash payment on the applicable Distribution Date; (b) the amount of such holder's Allowed Claim paid through sixteen (16) substantially equal quarterly payments beginning on the first Business Day of the second full calendar month after the Effective Date; or (c) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Debtor. Allowed Priority Tax Claims will be paid in accordance with §1129(a)(9)(C) and with interest as provided § 511 of the

Bankruptcy Code.[1]

3.3. U.S. Trustee Fees. The Reorganized Debtor shall pay to the U.S. Trustee all unpaid U.S. Trustee Fees due and payable as of the Effective Date as well as all such fees which become due and payable after the Effective Date. Any U.S. Trustee Fees due as of the Effective Date shall be paid in full on the Effective Date or as soon thereafter as is practicable. After the Effective Date, the Reorganized Debtor shall continue to pay the U.S. Trustee Fees as they accrue and become due and payable until the Final Decree is entered and this Bankruptcy Case is closed.

3.4. Governmental Bar Date. The Governmental Bar Date shall apply to all Claims by a Governmental Unit which are not Administrative Claims.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS

4.1. Class 1 – Triumph Claim. The Secured Claim held by Triumph shall be treated as follows:

(a) The Debtor and Triumph are parties to a Factoring and Security Agreement ("Factoring Agreement") dated as of December 7, 2017. Pursuant to the Factoring Agreement, the Debtor has sold its accounts to Triumph. Pursuant to the Factoring Agreement, Triumph has the right to retain 2% of the face amount of the invoices in a reserve account to secure the Debtor's obligations under the Factoring Agreement, including any repurchase obligations. The Factoring Agreement requires the Debtor to repurchase certain receivables, including those which are not paid within 90 days of the invoice date.

(b) In the Factoring Agreement, in order to secure the Debtor's obligations to Triumph, including the Debtor's repurchase obligations, the Debtor grants Triumph a first-priority security interest in presently owned and thereafter acquired accounts, chattel paper, deposit accounts, inventory, equipment, instruments, documents, letter of credit rights, commercial tort claims and general intangibles (collectively the "Triumph Collateral").

(c) Triumph shall retain all rights, liens and remedies pursuant to the Factoring Agreement, including all Liens or rights in the Triumph Collateral and Reserve Account. All of the existing and hereinafter arising rights granted to Triumph and the Debtor's monetary and non-monetary obligations[2] contained in the Factoring and Security Agreement and Post-Petition Chapter 11 Bankruptcy Rider to the Factoring and Security Agreement between the Debtor and Triumph (collectively, the "Post-Petition Agreements"), and the Final Order (i) approving extension of a pre-petition factoring agreement on a post-petition basis; (ii) authorizing use of cash collateral, (iii) granting replacement liens, (iv) modifying the automatic stay, and (v) granting related relief dated February 13, 2018 (Docket No. 33) (the "Final Financing Order") are hereby expressly incorporated into the Plan, and shall remain post-confirmation in full force and effect and fully binding on the Reorganized Debtor and all parties-in-interest of the Reorganized Debtor. Nothing contained in the Plan, shall adversely effect, impair or interfere with any of Triumph's rights and/or the Debtor's and Reorganized Debtor's

---

[1] As of the date of this filing, the interest rate is 6.5%.

[2] The Debtor has repaid the prepetition monetary obligations owed to Triumph and is current on any post-petition monetary obligations owed to Triumph under the Post-Petition Agreements. To the best of the Debtor's knowledge, it does not owe Triumph any payments, but this language is included to preserve the Reorganized Debtor's ability to continue operating with Triumph post-confirmation under the Post-Petition Agreements.

obligations to Triumph, under and with respect to the Post-Petition Agreements and the Final Financing Order, including, without limitation, Triumph's ownership of Purchased Accounts (as defined by the Post-Petition Agreements and Final Financing Order) and duly perfected first priority security interests, liens and interests recognized or granted to Triumph, which are fully preserved and shall secure any prepetition, post-petition and post-confirmation advances, over advances, and/or financial accommodations made to the Debtor and Reorganized Debtor.  Notwithstanding anything to the contrary, in the event of conflict between the Plan, the Confirmation Order and/or the Final Financing Order, the Final Financing Order will control.

        (d)      Class 1 is unimpaired.

4.2.    <u>Class 2 – Priority Claims</u>.  Each holder of an Allowed Priority Claim shall receive:

        (a)      One Cash payment in an amount equal to the principal amount of such Allowed Priority Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Claim may be paid without penalty, on the applicable Initial Distribution Date, or

        (b)      Such other treatment as may be agreed to in writing by the holder of the Priority Claim and the Reorganized Debtor.

        (c)      Class 2 is unimpaired.

4.3.    <u>Class 3 – Hartford Claim</u>.  The Claim held by Hartford shall be treated as follows:

        (a)      The Allowed Claim of Hartford shall be paid by the Debtor in substantially equal monthly installments of $5,000.00 each, with the first such monthly payment being due on the first Business Day of the second full calendar month after the Effective Date until the Allowed Hartford Claim is paid in full.  The Hartford Claim shall not be paid with the Monthly Plan Payment but will be paid from other funds of the Reorganized Debtor and/or by Principle.  Notwithstanding the foregoing, and for the avoidance of doubt, the Repayment Agreement dated as of October 10, 2017, shall remain in full force and effect as between Hartford and Principle, including, without limitation, the balloon payment due on October 15, 2019.

        (b)      Principle shall execute appropriate documents evidencing its joinder in this Plan for the purposes of paying the Hartford Claim.

        (c)      The above treatment of the Hartford Claim represents an agreement negotiated with Hartford as to both the Debtor and Principle.  Accordingly, Class 3 is unimpaired.

4.4.    <u>Class 4 – Amazon Claim</u>.  The Claim held by Amazon shall be paid as follows:

        (a)      Pursuant to the terms of the Amazon Agreement, Debtor has agreed to indemnify Amazon for the Claims asserted against Amazon in the Lines Lawsuit.  Amazon's Allowed Claim will be paid by the Debtor in substantially equal monthly installments as may be agreed between the Debtor and Amazon. The Amazon Claim shall not be paid with the Monthly Plan Payment but will be paid from other funds of the Reorganized Debtor.

        (b)      Class 4 is impaired.

4.5.    Class 5 – General Unsecured Claims.  Each Allowed General Unsecured Claim shall be treated as follows:

(a)    Each holder of an Allowed General Unsecured Claim shall be paid in full in seventy-nine (79) monthly payments.  The monthly amount of each payment shall be such Claimant's Pro Rata Share of the Monthly Plan Payment.  The first such payment being due on the first Business Day of the second calendar month after the Initial Distribution Date applicable to each such Allowed Class 5 Claim and a monthly payment being made in the first day of each successive calendar month thereafter.  Each such installment shall include both principal and interest. Each such Allowed Class 5 Claim shall bear interest from and after the Effective Date at the Plan Rate.

(b)    Claim 5 is impaired.

(c)    Subject to the occurrence of the Effective Date, Protective Insurance Company and the Debtor agree that Protective Insurance Company's general unsecured claim shall be an Allowed General Unsecured Claim of $216,000.00[3] and that no separate motion or order is required, other than this Modification and the Confirmation Order.

4.6.    Class 6 – Lines Lawsuit Claim.  Class 6 shall include all holders of Allowed Claims based upon the acts, circumstances and transactions which form the basis of the Claims asserted in the Lines Lawsuit, including any Allowed individual Claim of Jeffrey Lines.

(a)    In relation to the Class 6 Claims, the Bankruptcy Court has entered the following orders:

i.    An Order Sustaining Objection to Proof of Claim Number 10 filed by Jeffrey Lines [Docket No. 262] ("Lines Order") disallowing in full the Claim asserted by Jeffrey Lines, individually, against the Debtor pursuant to proof of claim no. 10; and

ii.    An Order Sustaining Objection to Proof of Claim Number 11 filed by Jeffrey Lines and Similarly Situated Amazon Prime Now Delivery Drivers [Docket No. 261] ("Lines Collective Order") disallowing in full the Claim asserted by Jeffrey Lines in proof of claim no. 11 pursuant to the Fair Labor Standards Act, 29 U.S.C., section 201 *et seq.* ("FLSA") on behalf of similarly situated Amazon Prime Now Delivery Drivers.

(b)    Pursuant to the Lines Order, any Claim against the Debtor by Jeffrey Lines has been disallowed in full.  Pursuant to the Lines Collective Order, any collective Claim by Jeffrey Lines pursuant to the FLSA on behalf of others similarly situated has also been disallowed in full.  Accordingly, neither Jeffrey Lines nor any other potential member of Class 6 holds an Allowed Class 6 Claim. Pursuant to section 5.3 of the Plan, Class 6 is vacant and eliminated unless and until reversal or modification of the Lines Order and/or the Lines Collective Order.

(c)    Based on the Lines Order and the Lines Collective Order, the Debtor or Reorganized Debtor shall move the Bankruptcy Court, as soon as practicable, to enter a final judgment dismissing the Lines Lawsuit with prejudice as to all defendants.

---

[3] This represents an agreed reduction in Protective Insurance Company's general unsecured claim, as filed in proof of claim number 9 on the claims register, from $431,856.00 to $216,000.00.

(d)     In the event that either the Lines Order or the Lines Collective Order is reversed or modified on appeal: (i) the Reorganized Debtor shall retain all rights, defenses and affirmative defenses as to any Person asserting a Class 6 Claim; and (ii) the Bankruptcy Court shall retain jurisdiction to determine and adjudicate the Allowance of all Class 6 Claims.

(e)     Each Creditor asserting a Class 6 Claim must file an appropriate proof of claim on or before the Bar Date.  No collective proof of claim shall be recognized as to any member of Class 6.  All Class 6 Claims shall be deemed as Contested Claims for purposes of this Plan.  Any Class 6 Creditor who fails to file a timely proof of claim shall not be entitled to any Distribution pursuant to this Plan.

(f)     The Bankruptcy Court shall retain jurisdiction to enter a final judgment in the Lines Lawsuit.

(g)     The provisions of subsections (h) and (i) below shall only apply to the extent that any Class 6 Claim, including that asserted by Jeffrey Lines, individually, becomes an Allowed Claims.

(h)     Any holders of Allowed Class 6 Claims shall be paid in full in seventy-nine (79) monthly payments.  The monthly amount of each payment shall be such Claimant's Pro Rata Share of the Monthly Plan Payment.  The first such payment being due on the first Business Day of the second calendar month after the Initial Distribution Date applicable to each such Allowed Class 6 Claim and a monthly payment being made in the first day of each successive calendar month thereafter.  Each such installment shall include both principal and interest. Each such Allowed Class 6 Claim shall bear interest from and after the Effective Date at the Plan Rate.

(i)     To the extent that any Class 6 Claim ever becomes an Allowed Claim, Class 6 is impaired.

4.7.   Class 7 – Mukes Lawsuit Claims.  Class 7 shall include all holders of Allowed Claims based upon the acts, circumstances and transactions which form the basis of the Claims asserted in the Mukes Lawsuit, including any Allowed individual Claim of Willie J. Mukes.

(a)     In relation to the Class 7 Claims, the Bankruptcy Court has entered the following orders:

i.      An Order Sustaining Objection to Proof of Claim Number 12 filed by Willie J. Mukes [Docket No. 263] ("Mukes Order") disallowing in full the Claim asserted by Willie J. Mukes, individually, against the Debtor pursuant to proof of claim no. 12; and

ii.     An Order Sustaining Objection to Proof of Claim Number 13 filed by Willie J. Mukes and All Other Tenet Concepts, LLC Former and Current Employees Similarly Situated [Docket No. 264] ("Mukes Collective Order") disallowing in full the Claim asserted by Willie J. Mukes in proof of claim no. 13 pursuant to the FLSA on behalf of similarly situated drivers.

(b)     Pursuant to the Mukes Order, any Claim against the Debtor by Willie J. Mukes has been disallowed in full.  Pursuant to the Mukes Collective Order, any collective Claim by Willie J. Mukes pursuant to the FLSA on behalf of others similarly situated has also

been disallowed in full. Accordingly, neither Willie J. Mukes nor any other potential member of Class 7 holds an Allowed Class 7 Claim. Pursuant to section 5.3 of the Plan, Class 7 is vacant and eliminated unless and until reversal or modification of the Mukes Order and/or the Mukes Collective Order.

(c)     In the event that either the Mukes Order or the Mukes Collective Order is reversed or modified on appeal: (i) the Reorganized Debtor shall retain all rights, defenses and affirmative defenses as to any Person asserting a Class 7 Claim; and (ii) the Bankruptcy Court shall retain jurisdiction to determine and adjudicate the Allowance of all Class 7 Claims.

(d)     Each Creditor asserting a Class 7 Claim must file an appropriate proof of claim on or before the Bar Date. No collective proof of claim shall be recognized as to any member of Class 7. All Class 7 Claims shall be deemed as Contested Claims for purposes of this Plan. Any Class 7 Creditor who fails to file a timely proof of claim shall not be entitled to any Distribution pursuant to this Plan.

(e)     The provisions of subsections (f) and (g) below shall only apply to the extent that any Class 7 Claim, including that asserted by Willie J. Mukes, individually, becomes an Allowed Claims.

(f)     Any holders of Allowed Class 7 Claims shall be paid in full in seventy-nine (79) monthly payments. The monthly amount of each payment shall be such Claimant's Pro Rata Share of the Monthly Plan Payment. The first such payment being due on the first Business Day of the second calendar month after the Initial Distribution Date applicable to each such Allowed Class 6 Claim and a monthly payment being made in the first day of each successive calendar month thereafter. Each such installment shall include both principal and interest. Each such Allowed Class 7 Claim shall bear interest from and after the Effective Date at the Plan Rate.

(g)     To the extent that any Class 7 Claim ever becomes an Allowed Claim, Class 7 is impaired.

4.8.    Class 8 – Interests in the Debtor.  Interests in the Debtor shall be retained by the holders thereof, although subject to the terms of this Plan. Class 8 is unimpaired.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF PLAN

5.1.    Classes Entitled to Vote.  Each impaired Class of Claims entitled to vote shall separately vote to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.2.    Class Acceptance Requirement.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

5.3.    Elimination of Vacant Classes.  Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or

rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

5.4. <u>Cramdown</u>. This section shall constitute the request by the Plan proponent, pursuant to section 1129(b) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

### ARTICLE VI
### MEANS OF IMPLEMENTATION OF THE PLAN

6.1. <u>Transfer and Vesting of Assets</u>. As of the Effective Date, all Assets shall be transferred to and vested in the Reorganized Debtor. The Assets shall be vested in the Reorganized Debtor free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in this Plan.

6.2. <u>Assumption of Obligation to Make Distributions</u>. The Reorganized Debtor shall be deemed to have assumed the obligation to make all Distributions pursuant to this Plan, including the obligation to make all Distributions on account of Allowed Claims.

6.3. <u>Actions by the Debtor and the Reorganized Debtor to Implement the Plan</u>. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtor and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation.

6.4. <u>Continued Existence of the Debtor</u>. The Debtor shall continue to exist, as a Reorganized Debtor, after the Effective Date, with all powers available to such legal entity, in accordance with applicable law and pursuant to its constituent documents. Upon the Effective Date, the Reorganized Debtor may, within its sole and exclusive discretion, take such action as permitted by applicable law and its constituent documents as it determines is reasonable and appropriate.

6.5. <u>Management of the Reorganized Debtor</u>. From and after the Effective Date, the Reorganized Debtor shall be managed in accordance with applicable law. There will be no change in the Debtor's management upon the Effective Date. The Reorganized Debtor shall continue to be managed by its current management, including: (a) Lloyd Jones, who currently serves as CEO; (b) Scott Cass, who currently serves as President and CFO; (c) Tom Mauriello, who currently serves as COO; and (d) Brent Harris, who currently serves as Vice President.

6.6. <u>Source of Funding for Operations and Plan Obligations</u>. The obligations under the Plan shall be funded by operation of the Reorganized Debtor's business.

6.7. <u>Post-Effective Date Service List</u>. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "<u>Service List</u>"): (i) any Person directly affected by the relief sought in the pleading, (ii) the U.S. Trustee, (iii) parties which have filed a Notice of Appearance in this Bankruptcy Case, and (iv) the Reorganized Debtor through legal counsel.

6.8. <u>Section 505 Powers</u>. All rights and powers pursuant to section 505 of the

Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date.

6.9.    Section 510(c) Powers.  All rights and powers to seek or exercise any right or remedy of equitable subordination or are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date as an Estate Defense.

6.10.    Section 506(c) Powers.  The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Reorganized Debtor.

6.11.    Plan Injunction.  The Reorganized Debtor shall have full power, standing an authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

### ARTICLE VII
### PROVISIONS GOVERNING DISTRIBUTION

7.1.    Distributions.  All Distributions to be made under this Plan shall be made by the Reorganized Debtor in the manner provided in this Plan and the Confirmation Order.

7.2.    Timing and Amount of Distributions.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

7.3.    Means of Cash Payment.  Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

7.4.    Record Date for Distributions.  As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims and Interests will be closed, and there shall be no further changes in the holder of record of any Claim or Interest.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of any Claims or Interests occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date.  However, the Reorganized Debtor may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

7.5.    Delivery of Distributions.  All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of

Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of its sole discretion.  After such date, all Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

7.6.    <u>W-9 Forms</u>.  W-9 forms must be provided to the Reorganized Debtor within thirty (30) days of a request made by the Reorganized Debtor.  If no W-9 form is provided within thirty (30) days of such request, the Claim of such person or entity shall be discharged and forever barred.

7.7.    <u>Time Bar to Cash Payments</u>.  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

7.8.    <u>Cure Period</u>.  Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.  Cure periods shall be determined separately for each payment default and for each Creditor entitled to a Distribution under this Plan.  A failure by the Reorganized Debtor to make a payment to the Texas Comptroller of Public Accounts (the "<u>Comptroller</u>") pursuant to the terms of the Plan shall be an event of default as to the Comptroller.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the reorganized Debtor at: 8200 Cameron Rd., Suite A198, Austin, TX 78754, Attn:  Chief Executive Officer, and upon Debtor's attorney at: Forshey & Prostok, LLP, 777 Main St., Suite 1290, Fort Worth, TX 76102, Attn:  J. Robert Forshey, Esq and Laurie Dahl Rea. The Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the Comptroller, at its option, may declare the default

non-curable and proceed to collect the remainder of the debt.

7.9. <u>Distributions after Substantial Consummation</u>. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

**ARTICLE VIII**
**RETENTION OF RETAINED CAUSES OF ACTION AND ESTATE DEFENSES**

8.1. <u>Retention of Retained Causes of Action</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Retained Causes of Action shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Reorganized Debtor. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtor or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Reorganized Debtor which shall be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtor, Estate or Reorganized Debtor. All Retained Causes of Action shall be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtor and the Estate hereby specifically reserve and retain the Retained Causes of Action. Reference is here made to the **Exhibit A** to the Plan, which constitutes an integral part of this Plan. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Retained Causes of Action in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Retained Causes of Action of which Debtor is presently aware and shall not act as a limitation on the potential Retained Causes of Action that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other causes of action, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws shall all be retained and preserved under this Plan to be transitioned to and vested in the Reorganized Debtor. All Retained Causes of Action are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

8.2. <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Reorganized Debtor. For this purpose, all Estate Defenses are hereby reserved and retained by the Debtor and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code. All Estate Defenses shall be deemed as transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

8.3. <u>Assertion of Estate Claims and Estate Defenses</u>. The Reorganized Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

## ARTICLE IX
## PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

9.1.    Claims Listed in Schedules as Disputed.  Any Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

9.2.    Responsibility for Objecting to Claims and Settlement of Claims.  The Reorganized Debtor shall have the exclusive standing and authority to either object to or settle and compromise any Objection to any Claim, including as follows:

        (a)    From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim.  Any Contested Claim may be litigated to Final Order by the Reorganized Debtor; and

        (b)    From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

9.3.    Objection Deadline.  All Objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Reorganized Debtor may seek to extend the Objection Deadline, either across the board or separately as to any Claim or Claims, pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim.  Any such motion may be granted without notice or a hearing.  In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor.  Nothing contained herein shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

9.4.    Response to Claim Objection.  If the Reorganized Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim.  Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.  The negative notice in the Objection shall satisfy the notice requirements of Rule 3007(a) of the Bankruptcy Rules, and the Reorganized Debtor shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

9.5.    Distributions on Account of Contested Claims.  If a Claim is Contested, then the dates for any Distributions as to any Claim shall be determined based upon its date of

Allowance and the resulting applicable Initial Distribution Date.  No Distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

9.6.   <u>No Waiver of Right to Object</u>.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtor's right to object to any Claim.

9.7.   <u>Offsets and Defenses</u>.  The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim.  Assertion of counterclaims by the Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceedings.

9.8.   <u>Claims Paid or Reduced Prior to Effective Date</u>.  Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Reorganized Debtor from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## <u>ARTICLE X</u>
## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

10.1.   <u>Assumption and Rejection of Executory Contracts</u>.  This Plan shall constitute a motion to assume all Executory Contracts except as expressly set forth in this section.  All Executory Contracts shall be deemed as assumed by the Debtor upon the Effective Date, unless an Executory Contract (a) is identified on the Schedule of Rejected Executory Contracts attached hereto as **<u>Exhibit B</u>**, (b) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, or (c) is the subject of a motion to assume or reject filed on or before the Confirmation Date.  The Debtor may file a motion for the assumption or rejection of any Executory Contract at any time through the Effective Date and such motion shall be determined by the Bankruptcy Court thereafter.

10.2.   <u>Cure Claim Payments</u>.  The Debtor believes that it does not owe or will not owe any Cure Claims for Executory Contracts being assumed in the Plan.  Any party to an Executory Contract asserting the existence of a Cure Claim as of the Effective Date must assert such Cure Claim by a written demand for payment thereof filed with the Court no later than thirty (30) days after the Effective Date and served on the Reorganized Debtor.  Any dispute as to the existence or amount of any such Cure Claim shall be determined by the Court as a contested matter pursuant to Bankruptcy Rule 9014.  To the extent it does owe any Cure Claims, any Cure Claims shall be treated as provided in this section.  Unless the holder of a Cure Claim and the Debtor or Reorganized Debtor agree in writing to other treatment of such holder's Cure Claim, or other treatment of such holder's Cure Claim is otherwise provided for under the Plan, any cure payment which may be required by section 365(b)(1) of the Bankruptcy Code under an Executory Contract that is assumed under this Plan shall be made by the Reorganized Debtor

on the applicable Initial Distribution Date. Notwithstanding the foregoing, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the provision of adequate assurance of future performance, or any other matter pertaining to assumption, the Reorganized Debtor shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

10.3. <u>Bar to Rejection Claims</u>. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor and its bankruptcy counsel, or the Reorganized Debtor and its counsel, as the case may be, by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

10.4. <u>Rejection Claims</u>. Any Rejection Claim not barred by section 10.3 above shall be classified as a Class 5 Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; <u>provided, however</u>, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed as an admission by the Debtor or the Reorganized Debtor that the rejection of any Executory Contract gives rise to or results in a Rejection Claim or shall be deemed as a waiver by the Debtor or the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

10.5. <u>Reservation of Rights</u>. Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or that the Debtor or Estate has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

<u>**ARTICLE XI**</u>
<u>**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN**</u>

11.1. <u>Conditions to Confirmation and Effectiveness of Plan</u>. The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtor; (b) the necessary Plan Documents have been executed and delivered, and (c) all other conditions specified by the Debtor have been satisfied.

11.2. <u>Notice of the Effective Date</u>. On the Effective Date, the Reorganized Debtor shall cause to be filed with the Court and served on all Creditors and parties-in-interests, a notice of the Effective Date.

## ARTICLE XII
## EFFECT OF THE CONFIRMATION OF THE PLAN

12.1.  Compromise and Settlement.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtor or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor or the Estate.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtor, the Debtor's bankruptcy Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.  The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtor, the Estate, and the Assets.  Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtor and its affiliates, successors, assigns, the Estate or the Assets or Reorganized Debtor any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

12.2.  Discharge. The terms, covenants and consideration under the Plan shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor and the Assets.  Except as otherwise expressly provided herein, upon the Effective Date, the Debtor and the Reorganized Debtor, and their successors in interest and assigns, shall be deemed discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor, and their successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan.

12.3.  **PLAN INJUNCTION.  THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION."  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING:  (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTOR, REORGANIZED DEBTOR OR THE ESTATE, WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING**

**BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE ESTATE, THE DEBTOR OR THE REORGANIZED DEBTOR; (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTOR, OR REORGANIZED DEBTOR, OR (iii) TAKING ANY ACTION IN RELATION TO THE DEBTOR, ESTATE, OR REORGANIZED DEBTOR, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST.  THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.**

12.4. **TEMPORARY THIRD-PARTY INJUNCTION (PRINCIPLE). AS LONG AS THE DEBTOR AND/OR PRINCIPLE ARE CURRENT IN THE PAYMENT OF THE HARTFORD CLAIM IN ACCORDANCE WITH THIS PLAN, HARTFORD WILL TAKE NO ACTION FOR THE COLLECTION OF THE HARTFORD CLAIM AGAINST PRINCIPLE. PRINCIPLE WILL EXECUTE APPROPRIATE DOCUMENTS EVIDENCING ITS JOINDER IN THIS PLAN FOR THE PURPOSES OF PAYING THE HARTFORD CLAIM.**

12.5. **TEMPORARY THIRD PARTY INJUNCTION (AMAZON).  AS LONG AS THE REORGANIZED DEBTOR IS CURRENT ON DISTRIBUTIONS TO THE HOLDERS OF ALLOWED CLASS 6 CLAIMS (IF ANY ARE ALLOWED) IN ACCORDANCE WITH THIS PLAN, SUCH CLASS 6 CLAIMANTS SHALL TAKE NO ACTION FOR THE COLLECTION OF ANY SUCH CLASS 6 CLAIMS AGAINST AMAZON.**

12.6. <u>Setoffs</u>.  Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); <u>provided, however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant.  In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtor without the consent of the Debtor or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

12.7. <u>Recoupment.</u>  Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtor or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtor or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtor or the Reorganized Debtor has provided a written response to such Claim or Interest holder, stating unequivocally that the Debtor or the Reorganized

Debtor consents to the requested recoupment. The Debtor and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtor or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

12.8. <u>Turnover</u>. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

12.9. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor, the Estate and all Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

## ARTICLE XIII
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

13.1. <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to this Bankruptcy Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a) To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b) To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c) To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d) To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e) To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f) To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided herein or in the Confirmation Order;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce the Plan Injunction against any Person;

(k)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(l)     To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Confirmation Order;

(m)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)     To enter a Final Decree closing this Bankruptcy Case;

(p)     To determine any other matter or dispute relating to the Estate or the Assets and the Distribution thereof, including all issues pertaining to any Claim or matter relating to any obligation by the Debtor to indemnify Amazon; and

(q)     To hear, determine and enter a final judgment in the Lines Lawsuit.

13.2.   <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Bankruptcy Case, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

13.3.   <u>Non-Material Modifications</u>.  The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

13.4.   <u>Material Modifications</u>.  Modifications of this Plan may be proposed in writing by

the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### ARTICLE XIV
### MISCELLANEOUS PROVISIONS

14.1. Severability. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the re-solicitation of any acceptance or rejection of the Plan.

14.2. Oral Agreements; Modification of Plan; Oral Representations or Inducements. The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. Neither the Debtor nor its attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

14.3. Waiver. The Reorganized Debtor shall not be deemed to have waived any right, power or privilege unless the waiver is in writing and signed by the Reorganized Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

14.4. Notice. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a) If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b) If to the Reorganized Debtor, notice shall be sent to the Reorganized Debtor and counsel of record for the Reorganized Debtor.

(c) Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d) Any notice given, made or sent as set forth above shall be effective upon

being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied or emailed to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

14.5. <u>Compliance with All Applicable Laws</u>.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; <u>provided, however</u>, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings.

14.6. <u>Duties to Creditors</u>.  No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtor shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Debtor's Bankruptcy Case, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

14.7. <u>Binding Effect</u>.  The Plan shall be binding upon and shall inure to the benefit of the Reorganized Debtor, the holders of the Claims or Liens, the holders of Interests, and their respective successors-in-interest and assigns.

14.8. <u>Governing Law, Interpretation</u>.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other Plan Documents.

14.9. <u>Payment of Statutory Fees</u>.   All accrued U.S. Trustee Fees shall be paid by the Reorganized Debtor as soon as practicable after the Effective Date, and thereafter shall be paid by the Reorganized Debtor as such statutory fees become due and payable.

14.10. <u>Filing of Additional Documents</u>.  On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.11. <u>Computation of Time</u>.  Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan.  If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day.  Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

14.12. <u>Elections by the Reorganized Debtor</u>.  Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

14.13. <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

14.14. <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

14.15. <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

Dated: May 24, 2019.

Respectfully submitted,

**TENET CONCEPTS, LLC**

By: _____

Joinder by Principle Distribution, LLC evidencing its agreement with this Plan for the purposes of paying the Hartford Claim:

**PRINCIPLE DISTRIBUTION, LLC**

By: _____

APPROVED:

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Laurie Dahl Rea
State Bar No. 00796150
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Fort Worth, TX 76102
Telephone: 817-877-8855
Facsimile: 817-877-4151
bforshey@forsheyprostok.com
lrea@forsheyprostok.com

ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION

L:\BFORSHEY\Tenet Concepts, LLC (C11) #5927\Plan and Disclosure Statement\Plan DS Ballot\Amended Plan of Reorganization (2v) 5.23.19.docx

# Exhibit A

# Retained Causes of Action

1. The cause of action against RLI Insurance Company for non-payment of insurance claims.

2. Except as expressly set forth in the Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtor shall, upon the occurrence of the Effective Date, be retained by, received by and vested in the Reorganized Debtor for the benefit of the Debtor's Estate.

3. Except as expressly set forth in the Plan the rights of the Reorganized Debtor to commence, prosecute or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date. **No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtor's Estate or the Reorganized Debtor will not pursue any and all available causes of action (including the Estate Claims, Estate Defenses and Avoidance Actions) against any Person, except as otherwise provided in the Plan.**

4. Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtor's Estate expressly reserves all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. Without limiting the foregoing, parties are advised that the Debtor specifically preserves for the Reorganized Debtor any Avoidance Actions it may hold against all parties disclosed in the Debtor's Schedules or Statement of Financial Affairs, as hereafter amended or supplemented, as having received any conveyances or transfers from the Debtor.

# Exhibit B

# Schedule of Rejected Contracts

# TO BE FILED AT THE HEARING ON CONFIRMATION OF THE PLAN

The Debtor filed its *Motion to Reject Global Corporate Services Agreement with EAN Services, LLC and Any Ancillary Rental Contracts* on May 20, 2019 [Dkt No. 267]. The Debtor intends to reject only the contracts and leases described in that motion to the extent they are executory contracts or unexpired leases. The Debtor intends to assume all other executory contracts and unexpired leases.